UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DARRYL JORDAN, SHEVON L. YOUNG, <br>     Plaintiffs, <br><br> v. <br><br> CITY OF PROVIDENCE, by and through its Acting Treasurer SHOMARI HUSBAND, ROGER ASPINALL, alias, CHRISTOPHER CURRIER, alias, SEAN MURNIGHAN, alias, MICHAEL MOONAN, alias, and JOHN DOES 1, 4-6, and 8-12 individually and in their official capacity as Providence Police Officers, RYAN McGARRY, alias, STEVEN PARÉ, alias, individually, and HUGH T. CLEMENTS, alias, individually, <br>     Defendants. | C.A. No. 23-cv-224-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

    Before the Court is defendant Michael Moonan's Motion to Dismiss all counts brought against him by plaintiffs Darryl Jordan and Shevon L. Young under Fed. R. Civ. P. 12(b)(6). (ECF No. 42.) For the reasons below, Officer Moonan's motion is GRANTED as to Counts Eight, Nine, Ten, Sixteen, and Seventeen, and DENIED as to Counts Seven and Fifteen. None of the other Counts are brought against Officer Moonan.

## I. BACKGROUND

As required on a motion to dismiss, the Court must accept the First Amended Complaint's well-pleaded facts as true and discard any conclusory assertions and legal conclusions. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013).

On the night of June 1, 2020, Mr. Jordan and Ms. Young—who are described in the First Amended Complaint as a dark-skinned Black man and a light-skinned Black woman, respectively—watched livestream video of a protest in Providence inspired by the murder of George Floyd. (ECF No. 29 ¶¶ 1-2, 22, 44.) They walked to downtown Providence, arriving around 12:30 a.m. on June 2, 2020. *Id.* ¶¶ 50-51. The plaintiffs eventually made their way to the area of Burnside Park, near the former center of the protest at Providence Place Mall, which they claim had already been dispersed from that area by police. *Id.* ¶¶ 23, 26, 52, 74-76.

While standing on the sidewalk of Exchange Terrace, the plaintiffs saw a young Black man "taunting" a group of police officers. *Id.* ¶¶ 78-81, 99. The officers began following that individual, who ran past the plaintiffs. *Id.* ¶¶ 82-85. As the group of officers approached the plaintiffs, Mr. Jordan, who was not in their direct path, "made no movements, uttered no words to the officers, and … only stood in place[.]" *Id.* ¶ 91. The officers "ran right past" Ms. Young and "suddenly veered" toward Mr. Jordan, who they tackled, beat, kicked, and eventually arrested. *Id.* ¶¶ 86, 89, 91-94, 101.

Later that morning, Mr. Jordan was brought to the Rhode Island District Court, Sixth Division and arraigned on one count of disorderly conduct in violation of

R.I. Gen. Laws § 11-45-1(a)(4).[1]  *Id.* ¶¶ 111-12, 117-18; ECF No. 45-1.  A District Court magistrate judge ordered Mr. Jordan's detention on a $1,000 surety bond.  *Id.* ¶ 118.  Ms. Young secured his release the next day.  *Id.* ¶ 128.

Officer Moonan signed the District Court Complaint against Mr. Jordan as the "Officer/Complainant," under text reading: "to any judge or justice of the peace: on behalf of the State I swear that the above defendant did commit the following offenses[.]"[2]  (ECF Nos. 29 ¶ 117; 45-1.)  (Capitalization omitted.)  An individual representing the City of Providence, who the plaintiffs do not identify as Officer Moonan, alleged at Mr. Jordan's arraignment that he "had been in the middle of the street blocking traffic."  (ECF No. 29 ¶ 112.)

Mr. Jordan alleges that Officer Moonan "made false and generalized allegations" in the District Court Complaint "without seeking … any facts" specific to Mr. Jordan beyond an arrest report written by defendant Sean Murnighan.  *Id.* ¶ 117.

---

[1] The offense statute reads:
> "A person commits disorderly conduct if he or she intentionally, knowingly, or recklessly …. [a]lone or with others, obstructs a highway, street, sidewalk, railway, waterway, building entrance, elevator, aisle, stairway, or hallway to which the public or a substantial group of the public has access or any other place ordinarily used for the passage of persons, vehicles, or conveyances[.]"

R.I. Gen. Laws § 11-45-1(a)(4).

[2] On a Rule 12(b)(6) motion, the Court will typically only consider a plaintiff's complaint and any attached or incorporated documents.  *See* Fed. R. Civ. P. 12(d); *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014).  The Court can consider the District Court Complaint, which was provided by Officer Moonan (ECF No. 45-1), without converting the Motion to one for summary judgment; the District Court Complaint is central to the plaintiffs' malicious prosecution claims against Officer Moonan.  *Foley*, 772 F.3d at 74 (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

3

That arrest report provided the following narrative:

> On 06/01/23, at approximately 2200 hours, Providence Police began to patrolling [sic] the area of Providence Place Mall due to multiple postings on social media of large groups gathering to riot and loot stores and businesses at the Providence Place Mall and the surrounding Downtown Area. Between 2200 hours on 06/01/2020 and 0500 hours on 06/02/2020, Police observed hundreds of protestors taking over Francis Street, completely blocking the road which would not permit access for passing vehicles. Police observed multiple subjects that began to show violent and tumultuous behavior by throwing bottle [sic] and rocks in the direction of Police and Police Vehicles. Police observed the protestors yelling and screaming profanities promoting excessively loud and violent behavior in a public place that would disturb a person of average sensibilities. As Protestors turned to rioting and encouraged looting Police attempted to disperse the crowd. Police made several attempts using loud verbal commands to disperse the crown [sic] advising the protesters [sic] if the crowd did not disperse arrests would be made. Following the multiple attempts to disperse the crown [sic] the following subjects were taken into Police custody and transported to Central Station where they were held and charged with Disorderly Conduct.

*Id.* ¶ 116. This arrest report listed thirty-two individuals, including Mr. Jordan, as arrestees; fifteen were white and seventeen were Black. *Id.* ¶¶ 113, 115. Each arrestee was charged with a single count of disorderly conduct. *Id.* ¶ 113.

The charge against Mr. Jordan was dismissed on February 11, 2021. *Id.* ¶ 130. The plaintiffs filed their initial complaint on May 31, 2023. (ECF No. 1.) Their First Amended Complaint added Officer Moonan as a defendant. (ECF No. 29.)

Mr. Jordan alleges that Officer Moonan (1) subjected him to malicious prosecution, contrary to Mr. Jordan's federal and state constitutional rights and Rhode Island common law (Counts Seven, Eight, and Fifteen); (2) violated his rights to equal protection under the federal and state constitutions (Counts Nine and Ten); and (3) violated R.I. Gen. Laws § 31-21.2-1 *et seq.* and § 18½.4(b) of the Providence Code of Municipal Ordinances (Counts Sixteen and Seventeen). (ECF Nos. 44 at 2

n.1; 29 ¶¶ 189-92, 197-99.)  Ms. Young does not assert any claims against Officer Moonan.  (ECF No. 44 at 2 n.1.)

## II.   MOTION TO DISMISS STANDARD

"On a motion to dismiss, the Court must assume the truth of all well-pleaded facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Williams v. Johnson & Johnson*, 581 F. Supp. 3d 363, 369 (D.R.I. Jan. 18, 2022) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)) (internal quotation marks and brackets omitted).  "To survive a motion to dismiss, the complaint must state a claim that is plausible on its face."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The relevant question in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether the complaint warrants dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible."  *Id.* (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013)) (deletion and brackets omitted).

## III.   DISCUSSION

### A.   Absolute Immunity

Officer Moonan argues that he should be shielded from these claims by prosecutorial immunity.  (ECF Nos. 26-1 at 2.)  Prosecutorial immunity is absolute.  *See Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) (42 U.S.C. § 1983 liability); *Diorio v. Hines Rd., LLC*, 226 A.3d 138, 146 (R.I. 2020) (R.I. state-law claims).  But to receive prosecutorial immunity, an official must have been performing a function "closely associated with the judicial process," rather than, for example, an

5

administrative or investigative one. *Penate v. Kaczmarek*, 928 F.3d 128, 135-37 (1st Cir. 2019) (quoting *Burns v. Reed*, 500 U.S. 478, 495 (1991)); *see also Diorio*, 226 A.3d at 146-47. Officer Moonan bears the heavy burden of showing that he should be protected by absolute, rather than qualified, immunity. *Penate*, 928 F.3d at 135.

To decide whether Officer Moonan might be absolutely immune, the Court needs to determine the nature and function of the acts attributed to him by the plaintiffs. The plaintiffs' allegations against Officer Moonan boil down to the following: that, acting in improper reliance on Mr. Jordan's race and color, Officer Moonan "made false and generalized allegations" against him in the District Court Complaint, causing Mr. Jordan to be seized without probable cause. (ECF No. 29 ¶¶ 117, 189-90, 192, 198-99.)

Complaining witnesses are not entitled to absolute immunity. *Malley v. Briggs*, 475 U.S. 335, 340 (1986). "Testifying about facts is the function of the witness, not of the lawyer." *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997). Whatever his or her job title, when an individual swears to the truth of information that he or she is providing to a court, "the only function that [he or] she performs … is that of a witness." *Id.* at 131. Here, Officer Moonan signed the District Court Complaint as an "officer/complainant," attesting that he "sw[ore] that the above defendant did commit" the disorderly conduct offense. (ECF No. 45-1.) *See* R.I. Dist. R. Crim. P. 6(b) (requiring that a complaint be made under oath); R.I. Super. R. Crim. P. 3 (requiring that "the complainant … swear to the facts of the complaint under oath"). Because Officer Moonan, in signing the complaint, was not performing a prosecutorial

6

function, but the role of a complaining witness attesting to a factual allegation, he is not protected by absolute immunity for the acts that the plaintiffs allege.

### B.   Counts Eight and Ten: Violations of the Rhode Island Constitution

Counts Eight and Ten allege, respectively, that the defendants violated sections 6 and 2 of article 1 the Rhode Island Constitution.[3]  (ECF No. 29 ¶¶ 190, 192.)  This Court has stated that the Rhode Island Supreme Court would likely find that sections 2 and 6 of article 1 do not provide private causes of action.  *See Kurland v. City of Providence*, 711 F. Supp. 3d 57, 76-77 (D.R.I. Jan. 11, 2024).  *Pimental v. Dep't of Trans.*, 561 A.2d 1348 (R.I. 1989), cited by the plaintiffs, does not cast doubt on that prediction.  *Pimental* concerned a defendant's motion to suppress evidence against him in a traffic prosecution; no private cause of action under article 1, section 6 was necessary.  *Pimental*, 561 A.2d at 1349-50.

For these reasons Officer Moonan's Motion to Dismiss is GRANTED as to Counts Eight and Ten.

### C.   Malicious Prosecution: Counts Seven and Fifteen

Malicious prosecution claims under § 1983 and Rhode Island common law share three elements: "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."  *Tempest v. Remblad*, No. 20-cv-523-MSM-LDA, 2022 WL 2817865, at *4 (D.R.I. July 19, 2022) (quoting

---

[3] Count Ten in one instance refers to "Equal Protection under the law in violation of Article 1, § 6." (ECF No. 29 ¶ 192.)  This appears to be a typographical error.

7

*Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013)).  The common-law tort also requires that the defendant acted with malice, which can be inferred from a lack of probable cause.  *Kurland*, 711 F. Supp. 3d at 74 (citing *Nagy v. McBurney*, 120 R.I. 925, 929, 392 A.2d 365, 367 (1978)).

The plaintiffs have alleged that the complaint against Mr. Jordan was dismissed, which would meet the favorable termination element.  (ECF No. 29 ¶ 130.)  *See Thompson v. Clark*, 596 U.S. 36, 39 (2022).  The critical question is whether Officer Moonan's statement under oath in the District Court Complaint caused Mr. Jordan to be seized without probable cause.

First, the Court declines to assume from this record that the magistrate judge found probable cause to believe that the plaintiff committed an offense when imposing the $1,000 surety bond.  The District Court Criminal Complaint indicates no such finding (ECF No. 45-1), and the Rhode Island District Court Rules of Criminal Procedure do not explicitly require one at a misdemeanor arraignment.  *See* R.I. Dist. R. Crim. P. 10.  A finding of probable cause by a neutral magistrate would give rise to additional hurdles for the plaintiffs under both the constitutional and common-law torts.  *See Hernandez-Cuevas*, 723 F.3d at 100 (magistrate's finding of probable cause creates a "causation problem"); *Solitro v. Moffatt*, 523 A.2d 858, 863 (R.I. 1987) (magistrate's finding of probable cause must be rebutted by evidence that the "court's decision was procured by fraud, perjury, misrepresentation, or falsification of evidence").

With that disclaimer noted, Mr. Jordan has stated plausible claims that Officer

8

Moonan committed constitutional and common-law malicious prosecution. Officer Moonan bases his dismissal argument on the existence of probable cause. (ECF No. 42-1 at 12.). He posits that he was entitled to rely on the facts alleged in the arrest report or, more broadly, on his fellow officers' decision to arrest Mr. Jordan, as establishing the existence of probable cause for Mr. Jordan's seizure. *Id.* at 12-13. Mr. Jordan counters that Officer Moonan either knew that the allegations in the arrest report were false or acted unreasonably in relying on an arrest report facially lacking in probable cause. (ECF No. 44 at 19-20.)

Probable cause is a practical concept that "does not deal with hard certainties, but with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). It exists when an officer reasonably concludes that the person to be seized likely committed or is about to commit a crime. *Wilson v. City of Boston*, 421 F.3d 45, 54 (1st Cir. 2005). Taking as true the facts alleged in the First Amended Complaint describing Mr. Jordan's actions that night, and making all reasonable inferences in the plaintiff's favor, probable cause to seize him did not exist when he was arrested, the arrest report's statements about him are false, and no alternative basis for probable cause emerged after his arrest. (ECF No. 29 ¶¶ 77-101; 116.) Accepting the facts alleged in the complaint as true, which the Court must do at this stage, no "proper basis" to believe that Mr. Jordan committed a crime existed when he was held on the surety bond, his "pretrial detention, no less than his original arrest, violated his Fourth Amendment rights." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368-69 (2017).

9

Officer Moonan's reliance on the arrest report or on his fellow officers' decision to seize Mr. Jordan would not make Mr. Jordan's seizure without probable cause, as effected by Officer Moonan's signing the District Court Complaint, any less unreasonable under the Fourth Amendment. *See United States v. Meade*, 110 F.3d 190, 194 n.2 (1997) ("If it turns out … that the directing officer lacked probable cause to order the [seizure], then the [seizure] itself is unlawful regardless of the [seizing] officer's otherwise proper reliance."); *Wilson*, 421 F.3d at 55-59 (officer who seized the plaintiff, based on a mistaken belief that a warrant existed for her arrest, violated her Fourth Amendment rights, but acted in an objectively reasonable manner).

Having plausibly alleged that Officer Moonan caused Mr. Jordan to be held under legal process without probable cause, the plaintiffs have stated a claim of malicious prosecution under § 1983. And because Rhode Island law allows malice to be inferred from a lack of probable cause, those allegations also make out a claim for common-law malicious prosecution. *See Nagy*, 120 R.I. at 929, 392 A.2d at 367. Officer Moonan's Motion to Dismiss is DENIED as to Counts Seven and Fifteen.

D. **Equal Protection: Counts Nine, Sixteen, and Seventeen**

The plaintiffs allege that Officer Moonan violated Mr. Jordan's right to equal protection under the United States Constitution, and that he also violated R.I. Gen. Laws § 31-21.2-1, *et seq.*, and § 18½.4(b) of the Providence Code of Municipal Ordinances.[4] (ECF Nos. 44 at 2 n.1; 29 ¶¶ 189-92, 197-99.) The Rhode Island

---

[4] Under the Comprehensive Community-Police Relationship Act of 2015, R.I. Gen. Laws § 31-21.2-1, *et seq.*, no law enforcement officer may "engage in racial profiling," including "disparate treatment of an individual on the basis, in whole or in part, of

10

Supreme Court has not addressed the standard applicable to violations of either the state statute or Providence ordinance at issue; the Court assumes that these provisions may be assessed, as the plaintiffs suggest in their objection to the Motion to Dismiss, under ordinary equal protection standards. (ECF No. 44 at 23.)

An equal protection plaintiff must show that, compared with others similarly situated, he was treated differently because of an improper consideration, such as his race. *Kuperman v. Wrenn*, 645 F.3d 69, 78 (1st Cir. 2011). Individuals are similarly situated if they are "roughly equivalent" in "all relevant respects." *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001). Put another way, a similarly situated comparator must "have been subject to the same standards and have engaged in the same conduct" as the plaintiff. *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 107 (1st Cir. 2015) (quoting *Rodríguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir. 1999)).

At the motion to dismiss stage, an equal protection plaintiff must, "[a]t a minimum … identify his putative comparators and put forth some facts showing the existence of malice or some other impermissible consideration[.]" *Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011) (citing *Barrington Cove Ltd. P'ship*, 246 F.3d at 7). The plaintiffs offer Ms. Young, who engaged in the same conduct as Mr.

---

the racial or ethnic status of such individual[.]" R.I. Gen. Laws § 31-21.2-3. The Providence Community-Police Relations Act states that, "[w]hen conducting any investigatory activity," including "any … detention," "law enforcement shall not rely on race … as a basis, in whole or in part, for suspecting that a person has committed or is about to commit a crime[.]" Providence, R.I. Code § 18½.4(a)-(b). Each states that a private cause of action exists for violations of these provisions. *See* § 31-21.2-4; § 18½.4(i)(2).

11

Jordan but was not arrested or prosecuted, as Mr. Jordan's comparator. (ECF No. 44 at 23.) Putting aside whether Ms. Young might serve as a comparator for equal protection claims against other defendants, she is not similarly situated to Mr. Jordan as it concerns Officer Moonan. Officer Moonan was not present at Mr. Jordan's arrest, and the plaintiffs do not allege that he had any knowledge or awareness of Ms. Young or her actions that night. Under these circumstances, the Court cannot reasonably conclude that Officer Moonan "treated" Ms. Young differently than Mr. Jordan; there is no way to know whether, if Ms. Young had been arrested with Mr. Jordan, Officer Moonan would have similarly sworn to a complaint against her. While potential comparators might, hypothetically, include some individuals who were arrested that night (or in other protests) but against whom Officer Moonan did not sign a complaint, the First Amended Complaint states only that all of individuals listed in the arrest report were charged with disorderly conduct. (ECF No. 29 ¶ 113.)

Because the First Amended Complaint does not allege that any similarly situated individual was treated differently by Officer Moonan, the equal protection claims against him must be dismissed. *See Alston v. Spiegel*, 988 F.3d 564, 575 (1st Cir. 2021) (lack of allegations as to similarly situated comparators justified dismissal of discrimination claim). Officer Moonan's Motion to Dismiss is GRANTED as to Counts Nine, Sixteen, and Seventeen.

### IV. CONCLUSION

For these reasons, Officer Moonan's Motion to Dismiss (ECF No. 42) is

12

GRANTED as to Counts Eight, Nine, Ten, Sixteen, and Seventeen, and DENIED as to Counts Seven and Fifteen.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
October 11, 2024

13